OLIVER *v.* CONLEY.

4-9363                                    236 S. W. 2d 80

Opinion delivered February 5, 1951.

*Hale & Fogleman,* for appellant.

*Rieves & Smith,* for appellee.

PAUL WARD, J.   Appellee, James Conley, plaintiff below, brought this action in the lower court against Charles Oliver, appellant, to recover for personal injuries sustained in a collision by the car in which he was riding with a truck owned by appellant and being driven by his employee, Herman Melcher.   The trial below resulted in a judgment in favor of Conley and against Oliver in the amount of $3,000, from which judgment appellant appeals to this court.

In the trial below Conley contended that the collision was a result of the negligent manner in which Melcher

was driving the truck at the time and appellant defended on the ground that his driver was not negligent, but that Conley was guilty of negligence on his part. The car in which Conley was riding was being driven at the time by Fred Lauderdale, and it is the contention of appellant that said Fred Lauderdale was guilty of negligence and also that his negligence would be imputed to Conley because they were at the time on a joint enterprise. On appeal appellant urges several grounds for a reversal of the judgment, but the principal one relied upon appears to be that there is no substantial evidence to sustain the verdict of the jury.

Since our holding is against appellant on this contention it is necessary under the well-established rule to set forth below only a sufficient resume of the testimony to show substantial evidence to support the finding of the jury.

All of the occupants of the car in which Conley was riding were colored people and he and some of the others involved lived on a plantation owned by one Oliver Woollard. On Saturday afternoon late on the 4th. day of October, 1947, plaintiff contacted a colored boy named Dan Newton, whose father owned a car and they planned a trip to Turrell for the purpose of buying a hat for Conley, and perhaps also to spend the evening in pleasure. They remained in Turrell until about four o'clock the next morning, which was Sunday morning, at which time Conley and Dan Newton started back home, taking along with them five and possibly six other passengers. Fred Lauderdale, a 16-year-old Negro, who by arrangement was to and did drive the car, had had experience in driving. In the front seat with him was Dan Newton and one Andrew Washington. In the back seat with Conley was a Negro woman named Lillie B. Lewis and two Negro men called "Trouble" and Paign. Conley was seated behind the driver and Lillie was sitting on his lap, or as he expressed it, she was sitting down between his legs.

Appellee's witnesses stated that the car in which they were riding was a 1941 DeSoto with good sealed

beam headlights. While proceeding home and going south on U. S. Highway No. 61 they met appellant's truck and the collision occurred in which appellee was injured.

Testimony on behalf of appellee showed that his car (a DeSoto) was being driven about 35 miles per hour on the right side of the road (which was the west side) with good lights, when it met the truck driven by appellant's employee and that the truck, coming from the south, appeared to swerve and wobble and cut to the right and then back across the center line; and that this caused the collision and serious injury to appellee. Two men who were squirrel hunting came to the scene of the collision a few minutes after it happened and testified they saw tire marks and also mud on the pavement indicating that the truck was on the wrong side of the road at the time and place the cars collided. There was testimony by the driver of the truck and also another witness who arrived later contradicting the above, but it was not sufficient to take the question of negligence from the jury.

One of the squirrel hunters mentioned above, on cross-examination, attempted to draw a plat showing the location of the cars, tire tracks and mud, but on redirect examination it was shown to be wrong and the court refused to admit it as an exhibit over the objections of the appellant. In our opinion this was not error because the evidence shows the plat was drawn in the presence of the jury and witness stated he was a mechanic and not a draftsman, and in all events the jury had knowledge of all the facts and could draw its own conclusions.

The evidence showed that the front of appellee's car struck the truck behind the front fender, and from this appellant argues these physical facts are conclusive that appellee was negligent, citing *Mo. Pac. Railroad Co.* v. *Moore,* 199 Ark. 1035, 138 S. W. 2d 384. We are unable to agree. If the collision took place as appellee's witnesses testified the point of impact could have been the same.

316

Neither do we think the court erred in allowing one of appellee's witnesses to state that Lillie B. Lewis (this Negro woman in the car) was laid out on the ground and covered up. We agree this testimony had little if any probative value to show the speed at which appellant was driving, but it was a part of the entire picture as the witness saw it. Also appellant's testimony brought out facts of similar import.

Finally it is contended by appellant that this case should be reversed because of the lower court's refusal to give certain requested instructions. We are unable to find any merit in this contention. The court gave twelve different instructions which we think fully and accurately covered the issues involved in the trial of the cause of action and the last one admonished the jury to "take no one instruction given you to be the whole law of the case but you will take all of them as such." No objection was made to any of these instructions. The instructions requested by appellant related to the matter of "joint enterprise" and contributory negligence, but as stated above these points were properly covered in the instructions given by the court.

Affirmed.